IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Larry Eugene Varvel, | ) | No. CIV 11-0278-PHX-FJM (DKD) |
| Petitioner, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

TO THE HONORABLE FREDERICK J. MARTONE, U. S. DISTRICT JUDGE:

Larry Eugene Varvel filed a timely Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 10, 2011, and an Amended Petition on March 4, challenging his convictions for sexual conduct with a minor and sexual abuse of a minor, and the imposition of a five-year prison term to be served consecutively to a life sentence. In Ground One, Varvel alleges that the victim was coerced and lied. He also contends that his sixth amendment rights were violated because his attorneys did not impeach the inconsistencies in another witness's testimony. In Ground Two, Varvel challenges the sufficiency of the evidence and the credibility of the witnesses. Respondents allege that the grounds are either not cognizable on habeas review or unexhausted and procedurally defaulted. For the reasons stated below, the Court recommends that the petition be denied and dismissed with prejudice.

**BACKGROUND**

The facts surrounding the convictions are summarized in the court of appeals memorandum decision:

The victim is a child who is developmentally delayed, and is Defendant's step-granddaughter. The victim and her mother, Lisa, who is also developmentally delayed, previously lived with Defendant and his wife, Nancy, her maternal grandmother. Defendant and his wife were involved with overseeing the care of both Lisa and her daughter.

Nancy died on December 1, 2006, after a long illness. After she passed away, Defendant continued to do things with his step-granddaughter, including taking her to church and to the zoo. One night before Christmas in 2006, Lisa and the child spent the night at Defendant's house.

A few days later, Defendant called Lisa to ask if he could take the child to church. Lisa's son, Sam, who was visiting at the time, answered the phone and asked the child whether she wanted to go to church with Defendant. The child looked at Sam with "fear in her eyes like . . . something had happened," and then told him that Defendant had touched her. This was the first time that Sam had ever seen such a look on the child's face, and the first time she had ever expressed a reluctance to go with Defendant. When he saw the look on her face, Sam told Defendant he would call him back and hung up.

Sam was confused and upset by his sister's declaration. He immediately took her to the home of Lisa's older sister, his Aunt Darci, to ask her advice on how to proceed. The child "provide[d] details" to Darci about what Defendant had done and why she did not want to go to church with him. The child was "very fearful, very scared, and very upset." Darci had never seen her niece "with the demeanor she had that day." Darci instructed Sam to call the police. Phoenix Police Officers responded and interviewed Sam and Darci separately.

The following day the child was taken to John C. Lincoln Hospital for an examination. The hospital reported the matter to the Maricopa County Sheriff's Office, and Detective Rodrigo Rojas contacted the family. After he talked to Sam, the detective made arrangements to have the child interviewed and examined at Child Help "because she needed to be interviewed by a more skilled or specially trained forensic interviewer."

The child was interviewed on January 3, 2007, by Michele Becker ("Becker"), an investigative interview specialist trained in interviewing developmentally delayed children, at the Phoenix Child Help Children's Center. Prior to the interview, Becker reviewed an initial police report, met with Rojas, and also spoke with Darci and Lisa. She then conducted her recorded forensic interview of the child.

During the interview, the child told Becker that Defendant had "touched her" while her grandmother was in heaven. She explained that the event had occurred at

> Defendant's house, while mommy was asleep on the couch. The child pointed between her legs and stated that he had put lotion down there, and took off her clothes and "kissed my titties." She also said that Defendant touched her "pee pees" and described Defendant's hand going into her "pee pees."
>
> Jacqueline Hess ("Hess"), a family nurse practitioner for Child Help, conducted a thorough medical examination of the child. The results of the overall physical and genital examinations rendered "completely normal" results. Hess was not surprised because "more than 95 percent" of children that report sexual abuse have normal examinations. She testified that there were many reasons for the normal examination, including, for example, the amount of time between the event and the examination, the fact that genital tissue heals very rapidly, or the fact that the type of sexual contact that occurred might not have created any type of injury.
>
> The detective interviewed Defendant in February 2007, and he denied any wrongdoing. He was arrested in June 2007, and charged with sexual conduct with a minor under the age of fifteen, a Class 2 felony, and dangerous crime against children, and sexual abuse of a minor under the age of fifteen, a Class 3 felony, and dangerous crime against children.

(Doc. 13, Exh H at 2-5).

On direct review, Varvel argued two errors by the trial court: (1) the denial of his Rule 20 motion for judgment of acquittal because of insufficient evidence of sexual conduct with a minor; and (2) the admission of an unredacted report of the victim's forensic medical examination (*Id.*, Exh E). On December 22, 2009, the court of appeals affirmed Varvel's convictions and sentences. In doing so, the court determined that (1) the State had presented sufficient evidence of sexual conduct with a minor; (2) the statements contained in the medical report were properly admitted for the limited purpose of demonstrating what information the nurse had before examining the victim; and (3) there was no confrontation clause violation in the admission of the medical report because the statements were not admitted for the truth of the matter asserted (*Id.*, Exh H).

On January 12, 2010, Varvel filed a Notice of Post-Conviction Relief (*Id.*, Exh I). Appointed counsel filed a Notice of Post-Conviction Review, indicating to the trial court that she had reviewed the record and could find no colorable claim for relief (*Id.*, Exh K). The

trial court granted Varvel leave to file a *pro per* petition (*Id*., Exh L). Varvel filed a letter dated June 18, 2010 in which he argued the following: (1) trial counsel was ineffective for failing to ask certain questions of the State's witnesses; (2) the victim was told what to say by her brother and sister; and (3) the evidence was insufficient to support the convictions (*Id*., Exh M). The trial court determined that the letter did not comply with the filing procedures outlined in Ariz. R. Crim. P. 32.5, and granted Varvel additional time to file a proper petition. Varvel filed a second letter setting forth similar claims; on September 9, 2010, he filed a post-conviction relief form, attaching his June 18 letter to the form (*Id*., Exh O, P). The State argued in its response that the petition should be dismissed because it did not comply with the rules, it failed to raise any proper claims, cite to the record or any applicable case law, or allege any facts which would entitle him to relief (*Id*., Exh Q). The trial court summarily dismissed the petition (*Id*., Exh S).

## EXHAUSTION OF REMEDIES

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. at 730-31. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims

is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

**DISCUSSION**

In Ground One, Varvel argues that the victim was coerced into giving her statement to the investigative specialist, and lied about the incident. He also argues that trial counsel was ineffective for not pointing out the inconsistencies in the testimony of Lisa, the victim's mother. In Ground Two, he argues about the credibility of witnesses' testimony, essentially contending that such testimony was insufficient evidence to convict him. Varvel's sufficiency of the evidence claim was not raised on direct review as a federal constitutional claim. Proper exhaustion requires that Varvel have fairly presented to the state courts the exact federal claim he is raising in his federal habeas petition, and in doing so describe the facts and federal legal theory upon which the claim is based. *Bland*, 20 F.3d at 1472. Because Varvel failed to alert the state court to a federal constitutional claim, his sufficiency of the evidence claim is unexhausted. *O'Sullivan*, 526 U.S. at 845. Because a return to state court would be futile, the claim is procedurally defaulted. *Teague*, 489 U.S. at 297-99.

His remaining claims that trial counsel was ineffective, and that the victim was coerced, were raised in his post-conviction petition, which the trial court dismissed for failure to present a colorable claim for relief. Varvel failed to petition for review in either the Arizona Court of Appeals or the Arizona Supreme Court. Because of this, these claims were never properly exhausted, and because these claims cannot be raised in a successive post-conviction petition, a return to state court would be futile. Therefore, these claims are also procedurally defaulted. Finally, Varvel has shown no miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

**IT IS THEREFORE RECOMMENDED** that Larry Eugene Varvel's Amended Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice** (Doc. 6).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 13th day of September, 2011.

_____
David K. Duncan
United States Magistrate Judge